IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARY GANLEY,

                Plaintiff,

      v.

COUNTY OF SAN MATEO,

                Defendant.

NO. C06-3923 TEH

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

     This matter came before the Court on December 20, 2007, on the parties' cross-motions for summary judgment. Plaintiff alleges she was denied due process of law when she was "separated from her position" as a correctional officer for San Mateo County, placed on involuntary medical leave, and forced to exhaust her accumulative vacation and sick leave. She also raises state law causes of action. For the reasons set out below, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED.

**FACTUAL BACKGROUND**[1]

     Mary Ganley was hired as a correctional officer for the County of San Mateo in the 1980's. She had permanent classified status as an employee under the County's Civil Service Commission Rules. For part of that time, she served as president of the Deputy Sheriff's Association (the union representing deputy sheriffs and correctional officers). Over the course of her employment, she submitted multiple Workers' Compensation claims, was

---

[1] Plaintiff objects to nearly all the evidence submitted by the County on the grounds that it is irrelevant, contradictory, not based on personal knowledge, or lacks foundation. The vast majority of these objections are argument couched as evidentiary objections. Certain objections are discussed more fully below; the remaining objections are OVERRULED.

on extended sick leave for nearly a year, and had several temporary modified duty assignments. Her last temporary modified duty assignment began on January 12, 2005.

As part of the Worker's Compensation claims process, Edward Katz, Plaintiff's treating physician, and Dr. James Stark, the County's Qualified Medical Examiner, examined Plaintiff and submitted reports to the County in January and February of 2005. Both agreed that Plaintiff could do only light duty work that would not involve altercations or "take downs." Both gave her a permanent disability rating.

On June 6, 2005, Janine Keller, the Human Resources Risk Manager for San Mateo County, and Yvonne Alvidrez, then the ADA Coordinator for the County, met with Plaintiff. Keller explained the doctors' conclusions. She also explained that the ability to perform take downs and become involved in inmate altercations was an essential function of the correctional officer position, and that the job could not be modified to eliminate those functions. At the meeting, Alvidrez informed Plaintiff verbally and in writing of her right to request reasonable accommodation of her permanent restrictions and gave her information on the interactive process. Keller offered Plaintiff help in finding other work within the County that would not conflict with her permanent restrictions. Keller informed Plaintiff that Victoria O'Brien, the Sheriff's Services Lieutenant, would discuss with her when her last day in the temporary modified position would be.

On June 21, 2005, O'Brien explained to Plaintiff that her temporary modified assignment was being discontinued because the physicians' reports indicated she was unable to perform essential functions of the job. O'Brien told her that this was her "last day" as a correctional officer. Ganley Decl. ¶ 3. O'Brien told Plaintiff to "go home" at the end of her shift that day and not to return for her next scheduled shift. County Response to Request for Admission No. 7. The same day, O'Brien sent an email to various County employees stating, "I met with Mary Ganley this morning. Today will be her last day as a Correctional Officer. She will be contacting retirement tomorrow to begin the process." Clisham Decl. Exh. 2.

2

After June 21, 2005, Plaintiff was paid using her accumulated vacation credits and sick leave. Plaintiff's pay status was switched from "regular" to "sick with pay." Plaintiff's sick leave and accrued vacation time were exhausted by the end of the pay period ending November 19, 2005. She remained on the payroll, with her time coded as "leave without pay." She continued to receive health benefits, and credit toward her retirement through January, 2006. On January 14, 2006, Plaintiff received her final paycheck for $825, for her uniform allowance.

Plaintiff declares that as of June, 2005, she had no desire to retire and wanted to remain in her light duty position. Ganley Decl. ¶¶ 2-3. But she did not dispute the doctors' conclusions that she was disabled when she met Janine Keller and Yvonne Alvidrez on June 6. Alvidrez Decl. ¶¶ 9, Keller Decl. ¶ 13. Moreover, she did not protest when Ms. O'Brien told her the light duty assignment was ending, and instead said she was applying for disability retirement. O'Brien Decl. ¶ 7. Plaintiff did, in fact, file for disability retirement benefits on August 1, 2005, stating under penalty of perjury that she was unable to perform the duties of a correctional officer.[2] Between July and September, 2005, Plaintiff received several notices about rehabilitative services, but responded only in October, saying she wanted rehabilitative services but was not ready for them.

There is no dispute that the County terminated Plaintiff's modified duty assignment because doctors' reports said she needed light duty and could not be involved in take downs and altercations, not for performance reasons or any other reason.

Plaintiff's Complaint alleges a single claim under 42 U.S.C. § 1983: that she was deprived of her property interest in her permanent public employment as a correctional

---

[2]  Plaintiff claims that her entire disability retirement application is inadmissible under the "collateral source rule," and that the Court should not consider it for any issue of damages, whether the County terminated the Plaintiff, or for any other issue. The collateral source rule holds only that if a plaintiff receives payments to compensate him for his injury from some source other than the wrongdoer, those should not be offset against the damages awarded. *United States v. Price*, 288 F.2d 448, 449 (4th Cir. 1961), *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir. 1962). It has nothing to do with admitting evidence relating to disability compensation for other purposes, such as a determinations of liability, or with whether the court can consider statements made in disability applications or the fact that the application was made. The objection is OVERRULED.

officer without due process of law, in violation of her Fourteenth Amendment rights. Plaintiff also alleges claims for benefits under California Government Code § 31721 and California Labor Code § 4850.

**ANALYSIS**

**I.     Procedural Due Process Claim Under 42 U.S.C. § 1983**

The government cannot deprive individuals of a "property interest" within the meaning of the Due Process Clause of the Fourteenth Amendment without procedural due process. *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). A section 1983 procedural due process claim has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993).

**A.   Plaintiff Has Property Rights At Stake**

**1.        Plaintiff Has A Property Interest In Her Job.**

A government employee has a constitutionally protected property interest in continued employment when the employee has an individual entitlement to the job grounded in state law or some other independent source, which cannot be removed except for cause. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Weisbuch v. County of Los Angeles,* 119 F.3d 778, 780 (9th Cir. 1997); *see also Skelly v. State Personnel Bd.,* 15 Cal.3d 194, 207-208 (1975).

Plaintiff was a permanent classified employee of San Mateo County. The San Mateo County Civil Service Commission Rules, Section XIII.4, provides that such an employee can be dismissed, suspended, reduced in step or demoted "for cause only." Those causes include "[p]ermanent or chronic physical or mental disability which incapacitates the employee from properly performing assigned duties." *Id.* § 4.D. Moreover, the Memorandum of Understanding between the Plaintiff's union and the County provides that a "permanent classified employee may be dismissed, suspended or demoted for cause only."

1    The County contends, bizarrely, that Plaintiff did not have a property interest in the

2  correctional officer position because she could not perform the essential functions of the job

3  – "it is axiomatic that if you cannot do the job, you no longer have a right to it."  Defendant's

4  Reply Brief in Support of Motion for Summary Judgment ("DReply") at 8:13-14.   This

5  inverted reasoning assumes that there is "cause" to terminate Plaintiff – the same fact of

6  which she seeks a procedurally adequate determination *prior to* her removal.   Under this

7  logic, no disabled employee would be entitled to procedural due process, and a determination

8  by human resources personnel that an employee is permanently disabled would divest an

9  employee of her property interest in her job.   Whether the County has cause to terminate an

10  employee is not the same question as whether the employee has a property interest.

11    The County offers no authority that even remotely supports its reasoning.   The

12  "legitimate claim of entitlement" required for property interest purposes comes from laws,

13  rules, or agreements that provide a continued expectation of employment (*see e.g., Roth*, 408

14  U.S. at 577) – not from the employee's actual fitness or qualifications for the job, or absence

15  of cause to terminate the employee.   Although some *disability* cases provide that an employer

16  can discharge or refuse to hire an employee with a disability who is unable to perform the

17  essential duties of the job, *see, e.g., Green v. State*, 42 Cal.4th 254, 262 (2007), not one of the

18  cases the County cites relates at all to procedural due process requirements.   Plaintiff

19  unquestionably has a property interest in her job.

20         **2.        Plaintiff Has A Property Interest In Pay/Accrued benefits**

21    Plaintiff also argues that she was  placed on an "involuntary illness leave of absence,"

22  which was a deprivation of property rights for which she was entitled to due process.

23    The California case *Bostean v. Los Angeles Unified School District*, 63 Cal.App.4th

24  95 (1998) squarely holds that involuntary illness leave constitutes a deprivation of a property

25  interest that triggers due process requirements.   Bostean complained that certain work

26  conditions aggravated his medical problems.   His supervisor asked his physician to clarify

27  Bostean's medical restrictions, and on the basis of the doctor's response, placed Bostean on

28  involuntary medical leave without pay.   *Id.* at 102.   He was given no notice of the allegations

pursuant to which he was placed on leave and no opportunity for a hearing before the leave began, although he was given a right to appeal. *Id.* Through his union representative, Bostean requested a hearing and argued he had been deprived of due process of law. The District's Personnel Commission considered a further medical examination and, seven months after Bostean was placed on leave, determined he could return to work. *Id.* at 104-05. Bostean claimed that he was deprived of a property right in his permanent employment because he was placed on involuntary illness leave without prior notice and an opportunity to respond, and that as a result, he lost wages, seniority credit, sick leave and vacation pay. *Id.* at 105.

The Court held that Bostean *had* been deprived of a property interest within the meaning of the due process clause. "[I]nvoluntary illness leave of absence without pay deprived Bostean of seven months' salary, and was tantamount to a suspension without pay." *Id.* at 110. The court reasoned that just as forced disability retirement constitutes a deprivation of a property right, *id.* at 111, citing *Barberic v. City of Hawthorne*, 669 F.Supp. 985, 989-90 (C.D. Cal. 1987), so does forced illness leave. The Court noted that the leave had "an adverse effect on at least some of his benefits, and his receipt of salary." *Id.* at 110. It also cited to other cases finding that employees had a property interest in their employment that was impaired when they were placed on *unpaid* medical leaves of absence. *Id.* at 111, *citing Ceko v. Martin*, 753 F.Supp. 1418, 1422-23 (N.D. Ill. 1990) and *Goldbeck v. City of Chicago*, 782 F.Supp. 381, 385 n.8.

The court treated time that Bostean received pay during his involuntary leave of absence because he was being paid from sick and vacation time as conceptually indistinguishable from unpaid leave. Bostean alleged he exhausted his sick leave and lost "vacation and other rights" in addition to wages. 63 Cal.App.4th at 103. The Court treated this as the equivalent of lost pay, stating he had been "deprived of seven months' salary" between November 23, 1993 and June 22, 1994. *Id.* at 110, 105. The court focused on the financial loss to the plaintiff, without differentiating whether that loss came from exhausting

sick leave or the failure to pay him.  Once it concluded that he had been deprived of due process, the court observed that

> to the extent that Bostean was paid a salary during the time of his involuntary leave of absence because he used sick or vacation time, he would be entitled to mandamus relief directing that [the defendant] credit him with that time, which he would have lost as a result of the wrongful deprivation..."

63 Cal.App.4th at 118.

This analysis is supported by the fact that Plaintiff's vacation and sick time had vested under applicable rules.  Ordinarily, a public employee in California is entitled to take accumulated vacation leave as a lump sum when he or she retires, and an employer cannot force an employee to forego the lump sum and take vacation before retirement.  *Bonn v. California State University, Chico,* 88 Cal.App.3d 985 (1979);  *Kistler v. Redwoods Community College Dist.,* 15 Cal.App.4th 1326, 1332-33 (1993).   Here, it is undisputed that Plaintiff would have been entitled to have any accrued vacation allowance added to her final paycheck.  MOU § 18.3.

The MOU between Plaintiffs' union and the County also provides that the County shall reimburse  retiring employees for each 8 hours' accumulated sick time by paying for one month's retirement health benefits.  MOU § 21.3.  Thus, as Plaintiff argues, when the County pays an employee from accumulated sick leave, it eliminates that employee's retirement medical benefits – a property right.

Forcing an employee to use such accumulated vacation and sick time, then, is *not* the same as paid leave.  If the employee stops receiving regular pay and instead the amount that he or she would have received in a lump sum or as health benefits is doled out in biweekly checks, the employee is in the same position financially as he or she would have been without pay.  Whether this process is viewed as forcing an employee to take accumulated vacation time, or taking away vested vacation pay, it involves a property right.

In response, the County incorrectly asserts that *Bostean* did not even discuss the "concept" of vacation and sick leave.  It also argues that *Ventura County Deputy Sheriff's Association v. Board of Retirement*, 16 Cal.4th 483, 497 (1997) shows that annual leave is

"regular salary or wages." But the passage from *Ventura* cited by the County is taken out of context. *Ventura* considers what payments to a county employee other than base pay are part of the employee's final "compensation" for the purposes of calculating retirement benefits. If anything, *Ventura* weighs in Plaintiff's favor – it holds that if an employee elects to receive cash in lieu of accrued vacation, "the cash, like the vacation pay the employee would otherwise receive, is part of the employee's 'remuneration' for past services." *Id.* at 497-98. Plaintiff clearly has a property interest in not forfeiting this remuneration.

The County also argues that Cal. Gov. Code § 31724 shows that being paid from sick leave does not deprive an employee of compensation. That statute provides that if a county employee has accumulated sick leave, the employee's disability retirement is only effective as of the date the sick leave is expired (unless the employee consents to an earlier retirement). But when Plaintiff's disability retirement starts under California law does not affect whether the employee has a property right to accumulated sick leave, or analytically make the sick pay "regular pay."

Plaintiff has a property interest both in her job in general and in not being placed on unpaid leave or forced to use accrued benefits.

**B.    Plaintiff Raised A Triable Issue Of Fact As To Whether She Suffered Involuntary Deprivation of Accrued Benefits/ Forced Unpaid Leave**

The nature of the deprivation Plaintiff suffered determines how much process she is due. If Plaintiff was dismissed or terminated from her position, long-settled law and civil service rules entitle her to at least notice and a right to appeal[3] if not a *Skelly* hearing. *See Skelly v. State Personnel Board*, 15 Cal.3d 195 (1975). If she suffered some lesser deprivation, then the Court must determine what process she is due under the balancing test set out in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

**1.    Plaintiff Was Not Terminated**

---

[3] Specifically, San Mateo County Civil Service Commission Rules, Section XIII..1 gives the appointing authority the right to dismiss employees, provided they can appeal. Section XIII.4 provides employees can be dismissed only for cause, and lists the causes, including disability. XIII.4.D. Section XIII.2 provides that the employee shall receive at least five days' notice before an action described in Section 1 (e.g., dismissal) is to be effective.

Even though Plaintiff repeatedly argues that she "lost her job," Memorandum of Points and Authorities In Support of Plaintiff's Motion for Summary Judgment ("PMSJ") at 8:3, 8:26, and seeks procedural protections appropriate for termination, she never squarely argues that she was terminated or dismissed. Instead, she uses phrases like "separated from her permanent status as a correctional officer," Plaintiff's Reply in Support of Summary Judgment ("PReply") at 5:20-21, or "forced to seek a disability retirement in lieu of regular employment." *Id.* at 5:17.

The County argues that the Court should look to a line of California cases interpreting a state statute relating to disability retirement, Cal. Gov. Code § 31725, to determine whether Plaintiff was terminated. Gov. Code § 31725 provides that when a county employee is "dismissed" from his or her job for permanent disability, but then the employee's application for disability retirement is denied on the ground he or she is not permanently disabled, the employer must reinstate the employee and provide back pay. Several cases analyze what it means for an employee to be "dismissed" within the meaning of § 31725, under factual circumstances nearly parallel to those here.

In *Stephens v. County of Tulare,* 38 Cal.4th 793 (2006), the plaintiff injured his thumb and was placed on a light-duty job. When a supervisor asked how he was doing, he said that his thumb still hurt and he needed frequent breaks. *Id.* at 798. His superior then sent him a letter explaining that "because of your statements we believe that we will not be able to provide a modified work assignment at this time." *Id.* The letter told Stephens he was "not to return to work until further notice." When his condition improved, he was to submit time sheets reflecting that he used sick and personal leave. *Id.*

The Court considered whether Stephens was "dismissed" within the meaning of Government Code § 31725. The court observed that "dismissed," "terminated," and "released" all have common meaning: that the employment relationship has ended at the employer's election, that the employer no longer has an obligation to pay salary or other compensation, and that the employee has no expectation that a position is available or will be made available. *Id.* at 802. Stephens was "plainly" not dismissed because his superior's

letter directed him to leave work temporarily and required him to report his absence as sick or personal leave. *Id.* at 803. He was "not faced with loss of income" because he could use sick leave. *Id.* at 806.

Soon thereafter, the California Court of Appeal held in *Kelly v. County of Los Angeles*, 141 Cal.App.4th 910 (2006) that an employee is not "dismissed" when

> her local government employer (1) advises her it currently has no available position to accommodate her work restrictions imposed following her industrial injury, (2) places the employee on unpaid industrial-injury leave, but (3) offers the employee vocational rehabilitation (including a vocational rehabilitation maintenance allowance) to train the employee for another position.... [u]nless the employer evinces an intent to sever the employment relationship...

*Id.* at 913. Like Plaintiff here, Kelly had been told her work restrictions were incompatible with her assignment and had been removed from the regular payroll. *Id.* at 923. The Court noted that "the term 'dismissed' does not simply mean the absence of salary." *Id.* at 925. Its holding that Kelly had not been "dismissed" turned on the fact that she had been offered vocational rehabilitation services for a different position, which shows that the county did not have an intent to terminate her. *Id.* The Court reiterated the California Supreme Court's admonition in *Stephens* that "it is the employee's obligation to seek clarification in the event he or she is uncertain as to the continuing existence of the employment relationship." *Id.* at 926, *quoting Stephens*, 38 Cal.4th at 802; *see also id.* at 922 (same).

These cases speak directly to the factual situation here: whether an employee has been dismissed when she is sent home because of a disability. Plaintiff argues that they are "not relevant" simply because they construe Government Code § 31725, and do not discuss due process claims. PReply at 4:21-5:5. But Plaintiff offers no alternative legal standard other than common sense by which to determine whether Plaintiff was dismissed.

While not binding, *Stephens* and *Kelly* are relevant and provide a useful guide to the Court's analysis. In light of that guidance, the undisputed facts show that plaintiff was not dismissed.

Lieutenant O'Brien told Plaintiff to "go home," and that June 21, 2005 was her "last day" as a corrections officer. The County does not dispute that it had no expectation that

1    Plaintiff would recover or return to work as a corrections officer.   But numerous factors

2    show she was not terminated from County employment.  First, although Plaintiff no longer

3    received "regular" pay, she was paid from accrued sick leave and vacation time until the start

4    of November, 2005.  During that time, she remained on the payroll on "leave with pay"

5    status.   She continued to accrue vacation time and sick time.  She continued to receive health

6    and dental benefits and had contributions made to her retirement account.   In fact, as

7    Defendants point out, *she herself* thought she was on "leave with pay." Her disability

8    retirement application, which she filed August 1, 2005, asked her to identify her "current

9    employment status" and gave her several options to choose from, including "On Leave of

10   Absence With Pay," "On Leave of Absence Without Pay," "Dismissed Due to Inability to

11   Perform my Job," and "I am not sure."  Plaintiff checked "On Leave of Absence With Pay,"

12   and signed the application under penalty of perjury.  *Cf. Kelly*, 141 Cal.App.4th at 925

13   (viewing the fact that Kelly herself stated she had not been terminated in her retirement

14   application as a factor in favor of finding she was not dismissed).[4]

15        Once Plaintiff's sick, vacation, and other leave expired, early in the pay period ending

16   November 19, 2005, she was switched to "leave without pay" status.  She no longer

17   accumulated vacation or sick time, and her other benefits ceased as well.[5]

18        Nonetheless, San Mateo County's Ordinance Code provides that if a disability

19   retirement application has been filed and a leave of absence has been granted,

20        granting of a leave of absence also grants to the employee the right to return to a
21        position in the same classification, or equivalent classification, in the same
         department, as held at the time the leave was granted, provided such position remains.

22

23

24        [4] Although Plaintiff argued for the first time at oral argument that she did so because she
         thought she would be receiving Labor Code § 4850 benefits which would replace the use of sick and
25       vacation time clearly reflected in her pay stubs.  That belief is not set out either in her papers or her
         declarations.
26
         [5] Although the County states that Plaintiff continued receiving medical and dental benefits
27       until her final paycheck on January 14, 2006, neither the Gorman Declaration to which the County
         cites nor the pay stubs she relies on seem to support that proposition.  At best, this is an unsettled
28       question of fact.

1    San Mateo County Ordinance Code § 2.71.140.[6]   Moreover, like the plaintiff in *Kelly,*

2    Plaintiff was offered the opportunity to request reasonable accommodations under the ADA,

3    was offered vocational rehabilitation services and help finding another job within the County,

4    and received $4,200 in vocational rehabilitation benefits.  O'Brien Decl. ¶ 6; Imrie Decl. ¶¶

5    5-14 and Exhs. B-G;  Keller Decl. ¶ 16.  Both common sense and *Kelly* teach that Plaintiff

6    was not terminated if the County was offering her alternative employment.  *See Kelly*, 141

7    Cal.App.4th at 924.   Plaintiff herself argues that she had a "property interest in her continued

8    employment with the County of San Mateo," PMSJ at 5:19-20,  and makes no claim that she

9    had a property interest in her light duty assignment.

10         Plaintiff was not terminated or dismissed from her employment.

11        **2.        Plaintiff Has Raised A Triable Issue Of Fact As To Whether She**
           **Was Placed On Involuntary Leave And Forced To Use Accrued**
12         **Sick And Vacation Time**

13         There is no dispute that the County did not pay Plaintiff her regular pay after June,

14   2005, and instead exhausted her accumulated sick and vacation time[7] to pay her after

15   November, 2005.  There is also no dispute that once her leave time was exhausted by early

16   November, 2005, her pay stubs showed she was on "LV W/O PAY," and she received no

17   monthly checks.

18         Plaintiff --just barely-- raises a triable issue of fact as to whether the above

19   deprivations were involuntary.  Plaintiff submitted a declaration that she wanted to continue

20   working. Ganley Decl. ¶ 3.  However, the various County employees who met with her

21   uniformly state that she never contradicted the doctors' assessments or said she wanted to

22   protest or appeal the County's placing her on leave.  Alvidrez Decl. ¶ 9, Keller Decl. ¶ 13,

23   O'Brien Decl. ¶¶ 6- 7 (O'Brien explained that Plaintiff could no longer keep the light duty

24   position because her injuries were permanent and "Ms. Ganley indicated to me that she

25

26         [6]  The County's unopposed request for judicial notice is GRANTED.

27         [7]  As of June 22, 2005, she had 365.60 hours of accrued sick leave, 171.65 hours of accrued
     vacation leave, 66.3 hours of accrued holiday leave, and 12.8 hours of accrued compensatory time.
28   Gorman Decl. ¶ 5.

1  understood and did not protest the decision. She told me that she would be applying for

2  disability retirement.").

3       Various County employees contacted Plaintiff about vocational retraining and ADA

4  accommodations, but Plaintiff never responded or requested either. She did, however,

5  discuss retirement options with a County "retirement analyst" three times in person before

6  June 21, 2005, and by telephone "approximately once every 10 days from the date she was

7  sent home until she filed her disability retirement application." Lamica Decl. ¶¶ 1-2. Instead

8  of choosing a service retirement, which would have been effective immediately and would

9  pay her until her disability retirement was processed, Plaintiff chose an option that allowed

10 her to continue to accrue service credit toward retirement, so that her retirement payments

11 were $232 more per month than they would have been had she retired immediately in June,

12 2005. Lamica Decl. ¶ 3, Hood Decl. ¶ 6-7.

13      Finally, as set out more fully below, even though Plaintiff was the past president of

14 her union and undoubtedly knew how to protest a decision she didn't like, she did not use

15 MOU or Civil Service Commission grievance procedures to challenge the County's acts.

16      It is a close call whether Plaintiff raises a triable issue of fact as to whether she was

17 placed on leave involuntarily, or, with full knowledge, chose to use up her sick and vacation

18 leave (as MOU § 19.6 allowed her to do)[8] and then take disability retirement. Although it

19 seems highly unlikely that any reasonable jury would find the deprivation involuntary, the

20 Court cannot ignore Plaintiff's declaration about her subjective intent. *S.E.C. v. Phan,* 500

21 F.3d 895, 909 (9th Cir. 2007)(court can disregard a self-serving declaration for summary

22 judgment purposes only when the declaration "state[s] only conclusions, and not such facts

23 as would be admissible in evidence"). Moreover, the County did not challenge Plaintiff's

24 claim that the deprivation was involuntary. Accordingly, the Court finds that Plaintiff has

25      [8]  MOU § 19.6, "Incapacity to Perform Duties," provides:

26      "If the appointing authority has been informed through a doctor's report of a medical
        examination that an employee is not capable of properly performing his/her duties, he/she
27      may require the employee to absent himself/herself from work until the incapacity is
        remedied. During such absence the employee may utilize any accumulated sick leave,
28      vacation, holiday and compensatory time."

1    raised a triable issue of fact as to whether she was involuntarily deprived of vacation, sick

2    time and other benefits, or placed on unpaid illness leave.

3        **C.   Plaintiff Received Procedural Due Process**

4            **1.        Standard**

5        A tenured public employee facing dismissal is "entitled to oral or written notice of the

6    charges against him, an explanation of the employer's evidence, and an opportunity to present

7    his side of the story," and "a very limited hearing prior to his termination, to be followed by a

8    more comprehensive post-termination hearing." *Hibbs v. Department of Human Resources,*

9    273 F.3d 844, 873 (9th Cir. 2001) (citations and quotations omitted).

10       But deprivations short of termination do not always require the full panoply of

11   procedural protections.  Unlike some legal rules, due process "is not a technical conception

12   with a fixed content unrelated to time, place and circumstances." *Brewster v. Board of Educ.*

13   *of Lynwood Unified School Dist.,* 149 F.3d 971, 983 (9th Cir. 1998)(citations omitted).

14   "(D)ue process is flexible and calls for such procedural protections as the particular situation

15   demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976).  In *Matthews,* the Supreme

16   Court set out three factors that the Court should balance to determine if procedures are

17   constitutionally sufficient:

18           first, the private interest that will be affected by the official action; second, the risk of
             an erroneous deprivation of such interest through the procedures used, and the
19           probable value, if any, of additional or substitute procedural safeguards; and finally,
             the Government's interest, including the function involved and the fiscal and
20           administrative burdens that the additional or substitute procedural requirement would
             entail.

21

22   *Id.* at 335.  "[P]rocedural due process analysis essentially boils down to an *ad hoc* balancing

23   inquiry." *Brewster*, 149 F.3d at 983.   The Court should first use the balancing test to

24   determine whether the employee is entitled to a predeprivation (as opposed to

25   postdeprivation) hearing.  *Id.*; *see also  Bostean*, 63 Cal.App.4th at 113, citing *Gilbert v.*

26   *Homar*, 520 U.S. 924, 932 (1997)(postdeprivation hearing can suffice in some situations*).

27   Then, the court should determine what specific procedures that hearing should entail, and, if

28

1   a formal adversarial hearing is required, what standard of proof the government should meet.

2   *Brewster*, 149 F.3d at 984.

3         **2.**       **Plaintiff Received All The Process Required By The Constitution On The Facts Of Her Case**

4

5       Plaintiff argues that a deprivation of benefits or involuntary unpaid leave is a

6   "deprivation of employment."  She then conflates that deprivation with termination to argue

7   she is entitled to the same pre-termination procedural protections she would receive if she

8   were fired.  PMSJ at 9, PReply at 7.  But she was not fired.  The County was not necessarily

9   required to give her all the procedural protections afforded an employee being dismissed.

10   Accordingly, this Court must balance the *Matthews* factors to determine what process

11   Plaintiff was due.

12       Plaintiff has a "significant private interest in the uninterrupted receipt of [her]

13   paycheck."  *Bostean*, 63 Cal.App.4th at 113, *quoting Gilbert*, 520 U.S. at 932.  Moreover, the

14   County has not shown it had a significant interest in removing Plaintiff immediately from her

15   light duty position  (*i.e.*, before she could be heard) – it is undisputed that Plaintiff was not

16   removed from her position because of an immediate threat to anyone's health or safety.

17       But the risk of erroneous deprivation in this case is slight.  *Bostean* is again

18   instructive.  There, the court determined that the risk of erroneous deprivation – of

19   "miscommunication, misinterpretation, and factual error" – was great, 63 Cal.App.4th at 115,

20   because

21        •  Bostean had no prior notice that his supervisor's inquiries to his physician were "preliminary to an involuntary illness leave of absence," rather than to efforts to accommodate his restrictions or change his work conditions, *id.* at 114; and

22

23        • Bostean had no predeprivation opportunity to be heard because he was told that his employer would be relying on the medical information to place him on leave on the last workday before the leave started, *id.* at 115.

24

25   The procedures the employer used were not reliable for "developing reasonable grounds to

26   support the imposition of an involuntary illness leave of absence without prior notice and

27   hearing."

28

Here, in contrast, Plaintiff *was* "informed of the true issues at stake and the purposes for, and consequences of, the medical reports." *Id.* at 116. Although she had no formal "fitness for duty" examination, she was examined both by her own personal physician and the County's physician to determine the extent of her disability. The County's physician reviewed the Correctional Officer Job Analysis, and opined in January, 2005 that "[B]ut for light duty work, Ms. Ganley would require medical retirement." Keller Decl. Exh. A, 1/16/05 Stark Report, at 2, 4. Dr. Katz, Plaintiff's own physician, found in February, 2005, that Plaintiff was "physically capable of performing light duty work where altercations and takedowns will not occur." *Id.* Exh. B, 2/9/05 Katz Report at 2. Dr. Katz's May 23, 2005 report states she has "permanent restrictions of no altercations or takedowns." *Id.* Exh. D, 5/23/05 Katz Report at 1. Even though these examinations were for the purposes of establishing her workers' compensation benefits, and not specifically to evaluate her ability to perform the essential functions of the job, Plaintiff conceded at oral argument that there is no reason to believe a "fitness for duty" examination would have been any more reliable than those of Drs. Katz and Stark to determine whether Plaintiff could perform the essential functions of the job. Moreover, the evaluations were, apparently, accurate, because Plaintiff stated under oath just over two months later in her disability retirement application that she could not perform her job duties.

Plaintiff received clear notice of the doctors' conclusions and that the County was planning to remove her from the light duty position on the basis of those conclusions at the June 6, 2005 meeting. After this meeting, she had 15 days in which to protest the decision before the June 21, 2005 meeting with Lieutenant O'Brien. At that meeting, she was again informed of the reasons she was being removed, and she again made no protest.[9] *Cf. Barberic v. City of Hawthorne,* 669 F.Supp. 985, 991 (C.D.Cal. 1987)(single meeting with supervisor at which employee is told he will be forced to retire for mental disability does not

---

[9] The County also argues that Plaintiff received due process because § 19.6 of the MOU authorized the County to send her home without formal notice or right to appeal. But the MOU does not abrogate Plaintiff's due process rights, and so does not affect the analysis under *Matthews*.

16

meet due process requirements, where employee had no idea that her mental stability was going to be discussed at all).

These predeprivation procedures were constitutionally adequate. Plaintiff was accorded "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Brewster*, 149 F.3d at 985 (citation omitted). Plaintiff protests that the June 6 meeting could not have satisfied due process because it was directed at ADA and workers' compensation processes, and because Ms. Keller had no involvement in the decision to remove Plaintiff from her job. But although the meeting may not have provided the procedural protections required by *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532 (1985), or *Skelly, supra,* those cases involved termination, not an involuntary leave or denial of benefits. The meeting certainly gave Plaintiff notice of her impending removal from the light duty assignment and an explanation of the evidence on which the decision was based. Although the County would be well-advised to inform similarly situated employees of their grievance or appeal rights, and let them know how their compensation will be handled, on the facts of this case, Plaintiff received the process to which she was entitled.

**D.** **Postdeprivation Appeal and Grievance Procedures Would Have Provided Plaintiff Due Process, And She Waived Her Due Process Claim By Failing To Use Them**

Even if Plaintiff was denied due process before the County began draining her benefits, Plaintiff chose not to use the various procedurally adequate appeal and grievance procedures to which she had access, and therefore waived her procedural due process claim.

Pursuant to Civil Service Rule XIV, an employee is entitled to appeal a dismissal under Civil Service Rule XIII.4.D (incapacity because of permanent disability) to the Civil Service Commission. Alternately, an employee can challenge dismissal by using the 4-step grievance process culminating in arbitration set out in § 33 of the MOU – the likes of which meet a public employer's obligation to provide due process. *See Armstrong v. Meyers*, 964 F.2d 948, 950-51 (9th Cir. 1992). Any employee can use the same MOU grievance procedure to challenge not only dismissal, but the County's application of any provision of

the MOU, including § 19.6 (the part allowing the County to require the employee to absent herself from work if its has received a doctor's report that the employee is not capable of performing her duties).   MOU § 33.1 (misnumbered 34.1).  Moreover,  Civil Service Rule XIV provides an appeal procedure, under which any employee adversely affected by a decision under the rules can appeal the decision to the Civil Service Commission.  The appeal procedure would apply to a dismissal under Rule XIII.D.4, which addresses dismissal on the basis of incapacity.

Plaintiff's failure to utilize the post-deprivation grievance procedures set out in the MOU and Civil Service Rules prevents her from claiming she was denied due process of law. If Plaintiff was aware she was entitled to a post-deprivation hearings under Civil Service Rule XIII and the MOU, yet knowingly waived them, then she cannot state a claim for violation of her due process rights.  *Ostlund v. Bobb*  825 F.2d 1371, 1373-1374 (9th Cir. 1987), *citing Correa v. Nampa School Dist.*, 645 F.2d 814, 817 (9th Cir.1981) (Petitioner waived her due process right to a hearing based on the fact that she knew of, and chose to forego, the administrative procedures); *see also Barberic,* 669 F.Supp. at 991 ("a due process right to a hearing, like any constitutional right, can be waived, and ... failure to take advantage of available procedures can constitute such a waiver"); *Zografos v. City and County of San Francisco,* 2006 WL 3699552, *9-*10 (N.D.Cal. 2006) (because deficiencies in pre-deprivation procedures could have been cured by post-deprivation hearing, plaintiff abandoned his claim he was deprived of pre-deprivation procedural due process when he abandoned the post-deprivation hearing).[10]

Plaintiff counters that there is no record evidence that she "was told or knew at the time that pre-removal due process was available to her" or that she "knew her rights." Plaintiff's Opposition at 17:6-10.  But although Plaintiff argues that no one ever gave her a

---

[10]   Plaintiff objects that because the Court struck the County's affirmative defense of Failure to Exhaust Administrative Remedies, the County cannot offer evidence of appeal and grievance procedures.  But the County does not argue that Plaintiff's failure to avail herself of these remedies is a failure to exhaust;  rather, the County claims that binding authority holds that an employee's failure to use constitutionally adequate procedures acts as a waiver and bars her cause of action. Accordingly, this objection is OVERRULED.

copy of the rules used to remove her from her position, or informed her of her appeal rights, she does *not* state she was unaware of her appeal rights. In fact, "[b]etween 1998 and 2004," Plaintiff "was elected and served on the executive board and later as president of the San Mateo County Deputy Sheriff's Association." Ganley Decl. ¶ 1.

Even though there is a strong presumption against finding a waiver of a constitutional right, *Johnson v. Zerbst*, 304 U.S. 458 (1938), it is simply inconceivable that Plaintiff was unaware of her right to appeal if she was dismissed or denied benefits. It is precisely for that reason that *Barberic*, 669 F.Supp. at 992, a case which finds no waiver, is distinguishable – there, there was no preexisting procedure for a hearing set forth in an employee manual or commonly known in the department that the employee "knew or had reason to know" about. Here, Plaintiff, as a former president of her union, unquestionably had "reason to know" of her appeal rights, and no reasonable juror could find otherwise. By failing to use constitutionally adequate appeal and grievance procedures, Plaintiff waived her due process rights.

## II.     Procedural Due Process *Monell* Claim

Plaintiff argues that the County has a policy and practice of denying individuals in Plaintiff's situation constitutionally required due process. However, because Plaintiff herself was not denied due process, she does not have standing to challenge any such the policy.

## III.    County's Liability Under Government Code § 31721 For Failure To Apply For Plaintiff's Disability Retirement

Government Code § 31721 provides, in relevant part, that "... an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any eligible member believed to be disabled." Plaintiff argues that the County had a "ministerial" duty to apply for a disability retirement for her.

This argument fails for two reasons. First, as set out in section I.B.1, *supra*, Plaintiff was not "separated" within the meaning of the disability retirement provisions of County

Employees' Retirement Act of 1937, Gov. Code § 31721, so the County's duty to apply for a disability retirement for her was not triggered.[11] Second, California law gives the County four months to file a disability retirement application after employee's service ends. Gov. Code § 31722. Since Plaintiff filed her own application barely two months after her last day on the job, the County can scarcely be liable for failure to do it for her within the four month limit.

## IV. Workers' Compensation Benefits Under Cal. Labor Code § 4850

Plaintiff's Complaint alleges that the County was required to provide her disability benefits under Labor Code § 4850 after it removed her from her position, but did not. Complaint ¶ 7. Labor Code § 4850 entitles a sheriff's employee who becomes disabled from work-related illness to a leave of absence without loss of salary, for the period of disability up to a year, or until the date he or she retires on permanent disability and is actually receiving pension payments.

At the hearing, Plaintiff clarified that she asserts denial of these benefits as a separate cause of action (and not as a form of damages stemming from a denial of due process). However, Plaintiff released *all* of her workers' compensation claims after this action was filed. Neach Decl. Exh. A (Nov. 6, 2006 stipulation settling claims for "all injuries, whether cumulative or specific, to the body parts on page 1, while in the employ of San Mateo County"). The fact that the case number for one of her fifteen workers' compensation claims was not listed on the release does not raise a triable issue of fact. The language of the release was clear and unambiguous: she released claims for *all injuries.*

//
//
//
//

[11] The County's unopposed request that the Court judicially notice documents relating to the the legislative history of § 31721 is GRANTED.

1    **CONCLUSION**

2        Defendant's Motion for Summary Judgment is hereby GRANTED and Plaintiff's

3    Motion for Summary Judgment is hereby DENIED.

4

5

6    **IT IS SO ORDERED.**

7

8    Dated: 12/20/07

9                                    THELTON E. HENDERSON, JUDGE
                                     UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28