IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARY GANLEY,

          Plaintiff,

v.

COUNTY OF SAN MATEO,

          Defendant.

NO. C06-3923 TEH

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

By Order dated January 15, 2008, the Court allowed Plaintiff Mary Ganley to move for reconsideration of certain issues in the Court's December 20, 2007 Order granting summary judgment to the defendant County of San Mateo. The Court has carefully considered the briefs and declarations filed in support of and in opposition to Plaintiff's motion. For the reasons set out below, the Motion for Reconsideration is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Mary Ganley was a longtime correctional officer for the County of San Mateo. She had permanent classified status as an employee under the County's Civil Service Commission Rules. For part of that time, she served as president of the Deputy Sheriff's Association (the union representing deputy sheriffs and correctional officers). Over the course of her employment, she was injured numerous times, submitted multiple Workers' Compensation claims, was on extended sick leave for nearly a year, and had several temporary modified duty assignments. Her last temporary modified duty assignment began on January 12, 2005.

Two physicians examined Plaintiff and found that she could do only light duty work that would not involve altercations or "take downs." Both gave her a permanent disability rating.

On June 6, 2005, the Human Resources Risk Manager and ADA Coordinator for San Mateo County met with Plaintiff. They explained the doctors' conclusions to her. They told her that the ability to perform take downs and become involved in inmate altercations was an essential function of the correctional officer position, and that the job could not be modified to eliminate those functions. They gave her notice of her right to request accommodation and offered to help her find another position in the County. They told her that Lieutenant Victoria O'Brien would discuss with her when her last day in the temporary modified position would be.

On June 21, 2005, O'Brien met with Plaintiff and again explained that her temporary modified assignment was being discontinued because the physicians' reports indicated she was unable to perform essential functions of the job.

Plaintiff did not protest at either of these meetings, and in fact told O'Brien that she planned to apply for disability retirement.

After June 21, 2005, Plaintiff was paid using her accumulated vacation credits and sick leave. Plaintiff's pay status, shown on her pay stubs, was switched from "regular" to "sick with pay." On August 1, 2005, Plaintiff filed for disability retirement benefits, stating under penalty of perjury that she was unable to perform the duties of a correctional officer. Plaintiff's sick leave and accrued vacation time were exhausted by the end of the pay period ending November 19, 2005. She remained on the payroll, with her time coded as "leave without pay." She continued to receive health benefits, and credit toward her retirement through January, 2006. On January 14, 2006, Plaintiff received her final paycheck.

Plaintiff's Complaint alleged a claim under 42 U.S.C. § 1983 that she was deprived of a property interest without due process of law, in violation of her Fourteenth Amendment rights. Plaintiff also alleged that she had been deprived of her interest in employment and retirement benefits under California Government Code § 31721 and California Labor Code § 4850 without pre-removal due process.

Both parties moved for summary judgment.

This Court granted the County's motion for summary judgment and denied that of the Plaintiff. Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment, December 20, 2007. The Court found that Plaintiff clearly had a constitutionally protected property interest in her job, *id.* at 4-5, and in her pay and accrued benefits, such that being placed on an involuntary illness leave would trigger due process requirements. *Id.* at 5-8. The Court held that although Plaintiff had not been terminated, *id.* at 8-12, she had raised a triable issue of fact as to whether she had been involuntarily placed on leave and forced to use accrued sick and vacation benefits.

The Court also found, however, that Plaintiff had received constitutionally adequate procedure on the facts of her case. *Id.* at 15-17. She was informed in advance of the purpose of medical examinations, there was no reason to think those examinations were unreliable, she got notice of the doctors' conclusions and of the fact that the County planned to remove her from her light duty position at the June 6, 2005 meeting, and had an opportunity to present her side of the story. *Id.*

As an alternative ground for granting summary judgment on the due process claim, the Court found that as a past union president, Plaintiff had "reason to know" of the post-deprivation appeal and grievance procedures available to her under the MOU and Civil Service Rules, and no reasonable jury could find otherwise. Because Plaintiff failed to make use of those procedures, she waived any due process claim she might have had. *Id.* at 17-19.

The Court found that the County was not liable for failure to apply for disability retirement on her behalf under Cal. Gov. Code § 31721 because she was not "separated" from employment within the meaning of the statute, and because she applied for retirement on her own before the County's four-month period to apply had expired. *Id.* at 19-20. Finally, it found that she had released *all* her Workers' Compensation claims in a November 6, 2006 stipulation settling claims for "all injuries ... to body parts ... while in the employ of San Mateo County." *Id.* at 20.

3

Plaintiff moved for leave to file a Motion for Reconsideration. At the hearing on the cross-motions for summary judgment, Plaintiff had asserted for the first time that after the June 21, 2005 meeting, she believed she had been placed on disability leave under Labor Code § 4850 (rather than on a leave that would drain her accumulated benefits) because the County's regular practice was to use accumulated leave while workers' compensation claims were pending, and then restore that leave once the claims are granted. The Court noted that if Plaintiff could support this assertion, then she might be able to raise a triable issue of fact as to whether she was on notice that the County would use her accrued benefits. Moreover, if she had no notice that her benefits were being used, she would have had no reason to file a grievance or appeal, so that her failure to do so would not waive a due process claim. January 15, 2008 Order Granting in Part and Denying In Part Plaintiff's Request to File A Motion for Reconsideration, January 15, 2008, at 1-3.[1]

**PLAINTIFF'S MOTION FOR RECONSIDERATION/ADDITIONAL EVIDENCE**

In support of her motion for consideration, Plaintiff submitted an additional declaration and supporting documents. According to Plaintiff, at the June 21, 2005 meeting, Lieutenant O'Brien told her that "[y]ou will be on paid vacation for two months and then you will be back at work." At that point, she believed that she "had not used a full year's disability leave with pay" on "each claim" she had made in the past, and therefore believed that the two months' "vacation" would be disability leave with pay under Labor Code § 4850. Declaration of Mary Ganley In Support of Plaintiff's Motin for Reconsideration ("Ganley Decl.") ¶ 1(b). She knew of several other employees who had been placed on such leave with pay before the effective date of their disability retirements. *Id.* Plaintiff states that "I thought I would be placed on disability leave with pay for two months, retired and returned to work on a contract basis no later than September 2005." *Id.*. ¶ 1(c). She alleges that O'Brien never told her that her accrued vacation and sick benefits would be used to pay her. *Id.* ¶ 1(d). She was <u>not</u> informed that she could request Advanced Disability Pension

---
[1] The Court rejected Plaintiff's remaining requests for reconsideration.

4

Payments or seek a retirement date of June 23, 2005 so that her accrued benefits would not be used. *Id.* ¶ 1(f).

Plaintiff declares (without other support) that "[i]n the San Mateo County Sheriff's Office, employees injured on the job who are unable to work are initially placed on paid sick leave and then, once a workers' compensation claim has been verified as an industrial injury, all of that time is changed to disability leave with pay under Labor Code § 4850." *Id.* ¶ 1(e). At the time, Plaintiff "anticipated being placed on disability leave with pay right away" because "on June 22, 2005, several of [her] workers compensation claims had already been approved." *Id.* When Plaintiff's payroll stubs showed that sick leave and vacation time were being used, she "did not worry at first" because she just thought the County's "processes to convert the sick leave and vacation to disability leave with pay" were simply taking a long time. *Id.* In November, 2005, she "became increasingly alarmed" that her sick leave and vacation time were not being returned, and so requested an "accounting of disability leave with pay." *Id.* ¶ 1(g). The County gave her printouts showing four claims for which she had been placed on such leave. One of them, No. SM 200088, showed she had received 87 days' leave, so she believed she had sufficient leave time left over. *Id.*

In early December, 2005, Plaintiff filed a formal request for Disability Leave With Pay, to run from June 22, 2005 to the date of her retirement. *Id.* 1(h) and Exh. E. On January 10, 2006, the request was denied, on the ground that "1 yr of DLWP met on 11/13/01, no longer eligible." *Id.*

Plaintiff further declares that she did not know she could grieve or appeal being placed on involuntary leave and being deprived of her accrued vacation and sick leave. She explains that her work as union president did not involve representing individual employees, had never heard of a grievance or appeal filed for involuntary leave and resultant loss of accrued benefits, and that in fact, Lt. O'Brien had repeatedly told her, in other contexts, that "there was no appeal allowed for involuntary leave involving disability retirements because the employees were not being disciplined." *Id.* ¶ 2(a-d).

The County presents ample evidence that Plaintiff was not entitled to Labor Code

5

§ 4850 benefits, and could not have been, as of June, 2005. The County's policies provide that after 90-day temporary disability leave is exhausted, the County will use an employee's sick and vacation pay if the employee is unable to work. Declaration of Janine Keller In Support of Defendants' Opposition to Plaintiff's Motion for Reconsideration ("Keller Decl.") Exh. B at 2. They also provide that the hours may be refunded with workers' compensation benefits: "[t]he employee is charged full sick leave or vacation time on the time card; however, a portion of the hours are refunded by applying the amount of the workers' compensation temporary disability benefit by the employee's hourly pay rate at the time of injury." *Id.*

As of June 22, 2005, however, Plaintiff had no outstanding workers' compensation claims. She had filed three claims for Labor Code § 4850 benefits in the past.

- Plaintiff filed Claim No. SM 20088 for a July 27, 1999 injury. She received 87 days of § 4850 benefits on this claim. (This is apparently the claim under which Plaintiff believed she had extra leave). As of October 11, 1999, she was no longer eligible for benefits on the claim because her physician had released her to work. Moreover, the five-year limitation period for § 4850 benefits set out in Labor Code § 5410 had elapsed by the time Plaintiff was placed on leave in June 2005, so she could not have been entitled to benefits under this claim in any case.

- Plaintiff filed claims SM20233 and SM210157 for two different injuries to two parts of her body that occurred on October 28, 2000. She received the statutory maximum of one year's benefits on each of these claims. She was informed on January 26, 2004 that the payments were ending on claim SM20233 and received written notice of when benefits ran out on the other claim as well.

- Plaintiff filed Claim No. SM201388 for an injury on November 13, 2000, but that claim was denied on October 4, 20001.

Declaration of James Bankson In Support of Defendants' Opposition to Plaintiff's Motion for Reconsideration ("Bankson Decl.") ¶¶ 6-13. In short, there was no pending workers' compensation claim for which Plaintiff could have expected to receive benefits.

Janine Keller, the County's Human Resources Risk Manager, explained in her declaration that the County never "automatically" pays disability leave. Keller Decl. ¶ 10. Disability leave is paid under Labor Code § 4850 *only* when the employee files a workers' compensation claim and the claim is approved. Keller Decl. ¶ 10. The MOU, § 20.4(C), explains that "[n]o job incurred disability leave with pay may be granted until the State

6

Compensation Insurance Fund or County Workers' Compensation Adjuster has accepted liability on behalf of the County, or the Workers' Compensation Appeals Board has ordered benefits to be paid." Moreover, in order to get disability leave with pay, a employee must file a specific form with the County requesting disability leave. Keller Decl ¶ 9 and Exh. A; MOU § 20.4(C). That form (the one Plaintiff in fact filed in December, 2005) specifically states that

> If **APPROVED**, by copy of this form, your Payroll Department is requested to return any sick leave and vacation time used during the above referenced time period to your sick leave and vacation balance. If **DENIED**, the time CANNOT be restored unless your claim is accepted at a later date.

Keller Decl. Exh. A (emphasis in original). Finally, the County also submitted Lt. O'Brien's testimony that she never told Plaintiff she would be on "paid vacation" for two months and then back at work, they never discussed workers' compensation benefits, and she never stated or implied that Plaintiff could do contract work later. Declaration of Victoria O'Brien In Support of Defendants' Opposition to Plaintiff's Motion for Reconsideration ("O'Brien Decl.") ¶¶ 5, 7, 9.

## DISCUSSION[2]

Plaintiff has now raised a triable issue of fact as to whether she was aware she could have grieved or appealed the use of her benefits. *See* Ganley Decl. ¶ 2(d). Accordingly, the Court will not rely on its alternative ground for decision – that Plaintiff waived her due process claim by failing to grieve or appeal use of her benefits – to grant summary judgment.

However, the Court's first ground for decision – that Plaintiff received all the process she was constitutionally due – still stands.

As this Court observed before, Plaintiff's pay stubs provided obvious notice that she was being paid from accrued sick and vacation time from June 21, 2005. Plaintiff's request

---

[2] The County argues Plaintiff is not entitled to reconsideration because she is not relying on newly-discovered evidence, as required by either Fed. R. Civ. Pro. 59(e) or 60(b). But those rules deal with a motion for new trial or request for relief from judgment, respectively. Plaintiff moves for reconsideration under Local Civil Rule 7-9(b)(3), on the ground of a "manifest failure by the Court to consider material facts and dispositive legal arguments."

7

for reconsideration intimated that she had a reasonable or legitimate expectation that she would be, or was being, placed on Labor Code § 4850 leave after the June 21, 2005 meeting. The evidence before the Court shows that there was simply no reason for Plaintiff to believe that the deductions from her accrued benefits were temporary and she would automatically or definitely be receiving disability benefits under Labor Code § 4850 to make up for those deductions.

The County's policies, including the request for disability leave with pay form which she had filled out and submitted many times in the past, make it crystal clear that her hours would be restored only if a workers' compensation claim was approved. Plaintiff's own declaration in support of the motion for reconsideration so acknowledges. Ganley Decl. ¶ 1(e)("...once a workers' compensation claim has been verified as an industrial injury, all of that time is changed to disability leave with pay under Labor Code § 4850.") Plaintiff may have had a subjective belief in June, 2005 that she "would be placed on paid disability leave under Labor Code § 4850," Declaration of Mary Ganley in Support of Plaintiff's Motion for Summary Judgment, filed October 29, 2007, ¶ 5, but that expectation was in no way legitimate, reasonable, or justified. She had no pending workers' compensation claims. Even if she filed one in the future, those benefits were by no means assured: her entitlement to benefits could be disputed, or she might be denied benefits. *See, e.g.,* Bankson Decl. ¶ 13 (Plaintiff's last-filed workers' compensation claim was denied on October 4, 2001).[3]

Plaintiff was without question on notice 1) that her accrued benefits were being used to pay her while she was off work in 2005; and 2) that they would not be refunded unless a workers' compensation claim was approved.

Plaintiff now argues that the County should have given her notice that she was "not entitled to disability leave with pay," and that failure to do so "deprived her of the opportunity to make intelligent choices to protect her benefits." Plaintiff's Motion for

---

[3] Although it does not bear on the due process question, the Court also notes the fact that in November, 2006, Plaintiff settled *all of her workers' compensation claims, without exception* – including any possible claim for benefits she said she thought would replace her accrued sick and vacation time.

8

Reconsideration at 8. But the County is not obliged to tell an employee who has not applied for benefits that she is not entitled to them. Plaintiff in essence complains that the County didn't warn her that she might not win a workers' compensation claim if she filed one. That is no deprivation of due process.

Plaintiff received adequate notice that her accrued benefits were being used, and, as set out in this Court's December 20, 2007 Order, constitutionally adequate procedure thereafter. *See* December 20, 2007 Order at 15-17.

**CONCLUSION**

Plaintiff's Motion for Reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: 3/07/08

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT